hmg.4.9.25

**U.S. Department of Justice**
Consumer Protection Branch

| **David Sullivan** | **Overnight Delivery Address** | **Mailing Address** |
| Phone: (202) 514-0516 | 450 Fifth Street, NW | P.O. Box 386 |
| Fax:   (202) 514-8742 | Sixth Floor South | Washington, D.C. 20044-0386 |
| Email: David.Sullivan2@usdoj.gov | Washington, D.C. 20001 | |

May 2, 2025

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

10:57 am, May 28 2025
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ____TTD____ Deputy

Patricia L. Richman
Assistant Federal Public Defender
Office of the Federal Public Defender for the District of Maryland
6411 Ivy Lane Ste 710
Greenbelt, MD 20770
patricia_richman@fd.org

Re: United States v. Kamal Khalid, et al.,
    Criminal No. 1:23-cr-371

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Kamal Khalid (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland and the Consumer Protection Branch of the Civil Division of the United States Department of Justice (together "these Offices"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by May 4, 2025, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Conspiracy, in violation of 18 U.S.C. § 371, and Count 2 of the Indictment, which charges the Defendant with Securities Fraud, in violation of 18 U.S.C. §§ 513(a) and (c). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which these Offices would prove if the case went to trial, are as follows:

Count One

That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant:

Rev. August 2018

| | | |
|---|---|---|
| First: | | agreed with at least another person to try to accomplish a shared and unlawful plan; |
| Second: | | knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | | during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Indictment; and, |
| Fourth: | | the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

Count 2

That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant:

| | | |
|---|---|---|
| First: | | made, uttered, or possessed a counterfeited security or forged security of a State; |
| Second: | | with the intent to deceive another person, organization, or government. |

Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 371 | 0 years | 5 years | 3 years | $250,000 or twice the pecuniary gain | $100 |
| 2 | 18 U.S.C. § 513(a) | 0 years | 10 years | 3 years | $250,000 or twice the pecuniary gain | $100 |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court shall order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

Rev. August 2018

d.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.  Collection of Debts: If the Court imposes a fine or restitution, the Financial Litigation Unit for the United States Attorney's Office for the District of Maryland will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes these Offices to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by these Offices.

## Waiver of Rights

4.  The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.  If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, these Offices, and the Court all agreed.

b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in

defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Rev. August 2018

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. These Offices and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

    a. These Offices and the Defendant further agree that the applicable base offense level is six (6) pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2B1.1(a)(1).

    b. These Offices and the Defendant further agree to the following additional enhancements and adjustments:

| | |
|---|---|
| Loss Increase (above $550,000, but less than $1,500,000) (U.S.S.G. § 2B1.1(b)(1)(H)) | + 14 |
| Offense Involved 10 or More Victims (U.S.S.G. § 2B1.1(b)(2)(A)(i)) | + 2 |
| Sophisticated Means Increase (U.S.S.G. §2B1.1 (b)(10)) | + 2 |
| Aggravating Role Increase – Organizer/Leader of less than 5 employees (U.S.S.G. §3B1.1(c)) | + 2 |

For a total offense level of **26**

    c. These Offices do not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. These Offices agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. These Offices may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement

Rev. August 2018

in the offense; (iv) is untruthful with the Court, these Offices, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

      7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

      8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

      9.      At the time of sentencing, these Offices and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). These Offices and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that these Offices or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, these Offices will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

      10.      In exchange for the concessions made by these Offices and the Defendant in this Agreement, these Offices and the Defendant waive their rights to appeal as follows:

      a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

      b.      The Defendant and these Offices knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture,

order of restitution, and term or condition of supervised release), except as follows: the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

    c.  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from these Offices or any investigating agency.

Restitution

    11.  The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties stipulate is at least $1,337,400. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to these Offices, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and these Offices may seek to be relieved of its obligations under this Agreement.

Forfeiture

    12.  The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

    13.  Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to a money judgment in the amount of money involved in the Defendant's conspiracy and proceeds obtained as the result of the fraud conspiracy, which amount is **at least $1,000,000 in U.S. currency**.

    14.  The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, these Offices, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) these Offices will be free from its obligations under this Agreement; (ii) these Offices may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, these Offices will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that these Offices is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

19. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not

Rev. August 2018

required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between these Offices and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and these Offices other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Amanda N. Liskamm
Director
Consumer Protection Branch

_____
David Sullivan
Senior Litigation Counsel
Manu J. Sebastian
Trial Attorney

Kelly O. Hayes
United States Attorney

Matthew Phelps
Assistant United States Attorney

Rev. August 2018

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5-5-25
Date

_____
Kamal Khalid

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

5/5/25
Date

5/28/25

_____
Patricia Richman

Rev. August 2018

10

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, these Offices would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Beginning at least as early as June 2016 and continuing through at least April 2019, in the District of Maryland and elsewhere, KAMAL KHALID ("KHALID"), the defendant herein, conspired and agreed with other persons known and unknown to the Consumer Protection Branch of the United States Department of Justice and to the United States Attorney for the District of Maryland, to commit offenses against the United States, to wit a conspiracy to commit odometer tampering, in violation of 49 U.S.C. §§ 32703(2) and 32709(b), and securities fraud, in violation of 18 U.S.C § 513, all in violation of 18 U.S.C. § 371. During the course of its investigation, the government developed evidence that Mr. Khalid was involved in the rollback of high-mileage odometers on additional motor vehicles from 2019-2023.

### A.  THE PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy to roll back high-mileage odometers on used motor vehicles to false, lower mileages and fraudulently alter the corresponding title paperwork to cause purchasers of said used motor vehicles, including the ultimate consumers, to pay more for vehicles than they would have paid if they had known the vehicles correct mileage readings.

### B.  MEANS AND MANNER OF THE CONSPIRACY

It was a part of the conspiracy that KHALID and other members of the conspiracy purchased used motor vehicles, usually with high mileage. It was further part of the conspiracy that KHALID and other members of the conspiracy caused the odometers of those vehicles to be rolled back to false, lower mileages. It was further part of the conspiracy that KHALID and other members of the conspiracy altered the vehicles' corresponding title paperwork to change or hide the high mileage readings. It was further part of the conspiracy that KHALID and other members of the conspiracy sold these vehicles to innocent purchasers in the District of Maryland and elsewhere, concealing the high mileage of the vehicles and in many instances representing to the purchasers that the false, low mileage readings were the vehicles' correct mileage readings.

As to the altered titles, it was further part of the conspiracy that when the title of a purchased vehicle stated a high mileage, KHALID and other members of the conspiracy caused the vehicle title to be altered to false, low mileage, to correspond with the rolled-back odometer reading. In this regard, it was further part of the conspiracy that KHALID and other members of the conspiracy, in some instances, obtained new ownership titles for vehicles from the Delaware Division of Motor Vehicles by submitting altered vehicle titles and other ownership documents certifying as accurate the false low-mileage odometer readings. It was further part of the conspiracy

that KHALID and other members of the conspiracy used the title documents with false, low mileage figures to hide from subsequent purchasers the true high mileage of the vehicles that KHALID and other members of the conspiracy sold. It was further part of the conspiracy that, in some instances, other states then issued new titles for the vehicles that displayed the false, low mileage figures that KHALID and other members of the conspiracy had provided.

It was further part of the conspiracy that the actions and misrepresentations of KHALID and other members of the conspiracy resulted in KHALID and other members of the conspiracy obtaining higher prices for the vehicles sold than they would have received if the vehicles had correct mileage readings, and that unsuspecting purchasers of the vehicles, including ultimate consumers, paid more for the vehicles than they would have paid if they had known the vehicles' true mileages.

It was further part of the conspiracy that KHALID and other members of the conspiracy caused an individual to contact an auto auction in the State of Maryland and the Maryland Motor Vehicle Administration ("MMVA") when their auto auction access was terminated and attempted to convince the auto auction and the MMVA to reinstate the KHALID and other members of the conspiracy's access so they could continue their conspiracy.

### C. OVERT ACTS

The following is a non-exhaustive list of overt acts performed during the course of this conspiracy:

#### Vehicle 1 – 2011 Dodge Ram 1500

On or about August 13, 2018, KHALID and other members of the conspiracy purchased Vehicle No. 1 on behalf of Autotrend LLC ("Autotrend"), a used vehicle dealership owned and operated by KHALID, at a wholesale auto auction located in Maryland for approximately $9,730. At that time, the vehicle's odometer had a mileage reading of approximately 167,096.

On or about August 13, 2018, KHALID altered and caused to be altered the existing Maryland Certificate of Title for Vehicle No. 1 to falsely state that the vehicle's mileage was 47,896 when purchased from the wholesale auction.

On or about September 10, 2018, KHALID submitted and caused to be submitted the falsely altered Maryland title to the Delaware Division of Motor Vehicles in support of an application for a Delaware title for Vehicle No. 1, and in doing so, secure a fraudulent title reflecting a false odometer reading of 47,896.

On or about December 27, 2018, KHALID sold and caused the sale of Vehicle No. 1 at an auto action in Maryland for approximately $15,500 and falsely represented that the mileage reading was 55,061.

### Vehicle 2 – 2007 GMC Yukon

On or about August 20, 2018, KHALID and other members of the conspiracy purchased Vehicle No. 2 on behalf of Autotrend at a wholesale auto auction located in Maryland for approximately $3,450. At that time, the vehicle's odometer had a mileage reading of approximately 155,542.

On or about September 10, 2018, KHALID entered and caused to be entered false information onto the Maryland Certificate of Title for Vehicle No. 2, *to wit*, KHALID signed and caused to be signed the name of a fake auto auction employee, as well as entered and caused to be entered an odometer reading of "Exempt," which is not permitted by Maryland law.

On or about September 13, 2018, KHALID submitted and caused to be submitted the falsely altered Maryland title to the Delaware Division of Motor Vehicles in support of an application for Delaware title for Vehicle No. 2, securing a title reflecting an odometer reading of "0".

On or about November 1, 2018, KHALID caused the Delaware Certificate of Title to falsely state that Eastern Motor Cars LLC ("Eastern Motor"), another used vehicle dealership owned and operated by KHALID, purchased the vehicle from Autotrend with the false low mileage of 88,434.

On or about November 1, 2018, KHALID sold and caused the sale of Vehicle No. 2 at an auto action in Maryland for approximately $7,900 and falsely represented that the mileage reading was 88,434.

### Vehicle 3 – 2008 Chevrolet Avalanche 1500

On or about September 24, 2018, KHALID and other members of the conspiracy purchased Vehicle No. 3 on behalf of Autotrend at a wholesale auto auction located in Maryland for approximately $3,950. At that time, the vehicle's odometer had a mileage reading of approximately 209,458.

On or about October 2, 2018, KHALID entered and caused to be entered false information onto the Maryland Certificate of Title for Vehicle No. 3, *to wit*, KHALID signed and caused to be signed the name of a fake auto auction employee, as well as entered and caused to be entered an odometer reading of "Exempt," which is not permitted by Maryland law.

On or about October 22, 2018, KHALID submitted and caused to be submitted the falsely altered Maryland title to the Delaware Division of Motor Vehicles in support of an application for Delaware title for Vehicle No. 3, securing a title reflecting an odometer reading of "0".

On or about December 2, 2018, KHALID caused the Delaware Certificate of Title to falsely state that Eastern Motor purchased the vehicle from Autotrend with the false low mileage of 77,530.

On or about December 27, 2018, KHALID sold and caused the sale of Vehicle No. 3 at an auto action in Maryland for approximately $8,000 and falsely represented that the mileage reading was 77,566.

### D. SECURITIES FRAUD

On or about October 20, 2018, KHALID did knowingly make, utter, and possess, and cause to be made, uttered, and possessed, a counterfeited and forged security of the State of Maryland, namely, a certificate of title relating to Vehicle No. 4, 2008 Cadillac Escalade, with the intent to deceive another person, organization, and government.

### E. VICTIMS

During the course of the conspiracy described above, the defendant's fraudulent conduct resulted in the victimization of at least 360 consumers.

### F. INTENDED LOSS/GAIN

While the fraudulent conduct resulted in loss to the victims, the amount of loss cannot reasonably be determined; however, the gain that resulted from the offense that can be attributed to the defendant's conduct in the conspiracy described above is $1,337,400. Of this amount, this particular Defendant gained approximately $1,000,000.

SO STIPULATED:

_____
David Sullivan
Trial Attorney

_____
Matthew Phelps
Assistant United States Attorney

_____
Kamal Khalid
Defendant

_____
Patricia Richman
Counsel for Defendant